**Cliff DRYSDALE**

v.

**FLORIDA TEAM TENNIS, INC., et al.**

Civ. A. No. 75–339.

United States District Court,
W. D. Pennsylvania.

March 1, 1976.

John K. Hart, Gregory A. Pearson, Buchanan, Ingersoll, Rodewald, Kyle, Buerger, Pittsburgh, Pa., for plaintiff.

Frank J. Clements, Pittsburgh, Pa., for World Team Tennis, Inc.

Myron B. Markel, Pittsburgh, Pa., for Cohen.

## OPINION

ROSENBERG, District Judge.

This matter is before me on the motion of the defendant, World Team Tennis, Inc. (WTT), to dismiss the complaint of Cliff Drysdale, the plaintiff a citizen of Great Britain and a professional tennis player, who entered into a Player's Contract with the defendant, Florida Team Tennis, Inc. (FTT), a franchisee of WTT, for the use of his tennis playing services for the year 1974.

The motion as presented is based factually on the averments contained in the Complaint, in the motion itself, in an affidavit of the plaintiff on belief of his legal right to bring suit, and on the deposition by the defendant of the plaintiff. In actuality this would seem to be a basis for a motion of summary judgment in whole or in part, rather than for a motion to dismiss the complaint. However, the circumstances of this stage of the proceeding are such as need no definition on my part for the purpose of disposing of the motion as presented.

The defendant WTT is the general governing body of its franchises which constitute a league of teams playing in competition among themselves. Individual players are chosen to play for a franchisee by way of a draft system used in most professional sports organizations. A player may negotiate a Player's Contract only with the franchisee which obtains the right to contract with him as a result of the draft system.

The plaintiff was drafted by the Philadelphia franchisee of the defendant WTT, which in turn assigned its exclusive right to contract with the plaintiff to the defendant FTT. On February 27, 1974 the plaintiff and the defendant FTT entered into a contract by which, upon the rendering of the plaintiff's services, he would receive a consideration of the sum of $60,000 for the 1974 season. Theodore Cohen, the owner of the defendant FTT, personally guaranteed the payment due under the $60,000 agreement.

The plaintiff alleges that (1) the defendants FTT and Cohen as guarantor failed to make requisite salary payments; (2) the defendant WTT impliedly and expressly warranted the solvency of its franchise and guaranteed players' salaries; and (3) the defendant WTT agreed, combined, and conspired with each franchisee to restrain trade and commerce by conducting its player draft and establishing exclusive negotiation rights with individual players constituting a group boycott in violation of § 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

FTT is now defunct and on May 22, 1975, an entry of default was filed by the plaintiff and default judgment was entered in favor of the plaintiff against the defendant FTT for failure to plead or answer.

The defendant WTT avers in its motion to dismiss that (1) it is not subject to the jurisdiction of this court being a nonprofit California corporation that does not do business in the Commonwealth of Pennsylvania within the meaning of the Pennsylvania Long Arm Statute, 42 P.S. Pocket Parts, § 8309; (2) the plaintiff failed to state a claim upon which relief may be granted in that (a) he lacks standing to raise antitrust violations; (b) the allegation of implied warranty is not founded in law, and (c) he does not allege knowing reliance upon, or consideration for any explicit guaranty; and (3) that there is lack of venue

since the defendant is not doing business within the meaning of 15 U.S.C. § 22 and 28 U.S.C. § 1391(c).

This diversity action involves a plaintiff from Great Britain, a defendant Pennsylvania corporation FTT, an individual defendant Theodore Cohen residing in Pennsylvania, and a defendant California corporation WTT which is not registered to do business in the Commonwealth of Pennsylvania. The defendant WTT charges that it is not now nor was it doing any business within the Commonwealth of Pennsylvania which would connect it with the present action.

The Pennsylvania statute on nonqualified foreign corporations subject to service of process is as follows:

"(a) General rule—Any foreign corporation which shall have done any business in this Commonwealth without procuring a certificate of authority to do so from the Department of State as required by statute, shall be conclusively presumed to have designated the Department of State as its true and lawful attorney authorized to accept, on its behalf, service of process in any action arising within this Commonwealth." 42 P.S. § 8302.

"Where process is issued against any corporation or individual by any court of the United States empowered to issue such process under the laws of the United States, the Department of State is authorized to receive such process in the same manner and with the same effect as provided in this chapter for process issued by the courts of this Commonwealth." 42 P.S. § 8308.

■ Judge Gerald Weber of this Court in a parallel case of *Florida Team Tennis, Inc. v. World Team Tennis, Inc.,* 401 F.Supp. 117 (D.C.Pa.1975), held that WTT was and is doing business in the Commonwealth of Pennsylvania. That case involved two of the same parties involved in the present action and the facts concerning business contacts within the Commonwealth are almost identical. The affidavits submitted by the parties as well as the complaint lead me to adhere to Judge Weber's decision that there can be no doubt that the defendant WTT was doing business within the Commonwealth of Pennsylvania and subject to service of process proscribed in 42 P.S. § 8302.

■ The defendant argues that no activity of WTT which occurred in Pennsylvania was in any way connected with the contract between the plaintiff and the defendant FTT and therefore it cannot be served. This contention holds no weight in light of the statutory interpretation given to 42 P.S. § 8302. *Glen Knit Industries, LTD. V. E. F. Timme & Son, Inc.,* 384 F.Supp. 1176 (D.C.Pa.1974) held that:

"The phrase, 'any action arising within this Commonwealth,' as used in 42 P.S. § 8302, has not yet been specifically interpreted by the Supreme Court of Pennsylvania, but a prior statute where identical language was used has been construed by the Court of Appeals for the Third Circuit in *Siders v. Upper Mississippi Towing Corporation,* 423 F.2d 535 (3d Cir. 1970), in light of the decision of the Pennsylvania Supreme Court in *Myers v. Mooney Aircraft, Inc.,* 429 Pa. 177, 240 A.2d 505 (1967). The phrase 'means nothing more than that cause of action is filed in Pennsylvania.' *Siders,* supra, 423 F.2d at 537, n. 3. That construction is binding on this Court." (footnotes omitted) at page 1177.

■ The plaintiff filed his cause of action within the Commonwealth of Pennsylvania against a nonqualified corporate defendant WTT which:

(1) is the general governing body of the franchisees;

(2) has two franchises within the Commonwealth located in Pittsburgh and Philadelphia;

(3) receives percentages of the gate receipts from these franchises;

(4) during 1974 maintained an office in Pittsburgh;

(5) listed itself in the local Pittsburgh telephone directory;

(6) held a board meeting in Pennsylvania during 1974; and

(7) conducted intraleague matches in Pittsburgh and Philadelphia throughout the 1974 season.

There is no basis for holding that the defendant is not within the in personam jurisdiction of this court.

The defendant WTT also attacks the plaintiff's standing to bring an antitrust action and contends that he was not directly damaged by any alleged antitrust violation. The plaintiff alleges that due to the draft system conducted by the defendant WTT and used to obtain his services, the Philadelphia franchisee received the exclusive right to bargain with him. When this right to contract was assigned to the defendant FTT, he was completely foreclosed from initiating any bargaining with other franchise members of the defendant WTT. This inability to be free to negotiate compelled him to sign a Players' Contract with the defendant FTT. His only alternative was to not play for *any* franchisee. He chose to play and therefore contracting with the defendant FTT resulted in loss of his salary under the Players' Contract, which would have been prevented if he were free to negotiate with other franchisees.

The plaintiff alleges jurisdiction in § 4 of the Clayton Act, 15 U.S.C. § 15, which states,

"Any person who shall be injured in business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

In order to protect a private citizen Congress provided a means by way of statute to afford relief to those injuries related to antitrust violations. However not all persons may bring the action permitted under 15 U.S.C. § 15.

Certain standing requirements must be met by the prospective plaintiffs to show that their protection is the fundamental purpose of the antitrust laws. *In re Multidistrict Vehicle Air Pollution M.D.L. No. 31*, 481 F.2d 122, C.A.9, 1973.

Two approaches have been used to determine standing under 15 U.S.C. § 15: (1) direct injury, *Kauffman v. Dreyfus Fund*, 434 F.2d 727, C.A.3, 1970; and (2) target area, *In re Multidistrict Vehicle Air Pollution M.D.L. No. 31, supra; Carnivale Bag Co., Inc. v. Slide-Rite Mfg. Co.*, 395 F.Supp. 287 (D.C.N.Y. 1975). It is incumbent upon the plaintiff in the "direct injury" to show a causal link between the alleged antitrust violation and the resulting harm suffered. *Stokes Equipment Company v. Otis Electric Co.*, 340 F.Supp. 937 (D.C.Pa.1972). It cannot be an incidental result occurring only as a matter of circumstances. *SCM Corp. v. Radio Corp. of America*, 407 F.2d 166, C.A.2, 1969, cert. den. 395 U.S. 943, 89 S.Ct. 2014, 23 L.Ed.2d 461 (1969), rehearing denied 396 U.S. 869, 90 S.Ct. 38, 24 L.Ed.2d 125 (1969); *Productive Inventions v. Trico Products Corp.*, 224 F.2d 678, C.A.2, 1955, cert. den. 350 U.S. 936, 76 S.Ct. 301, 100 L.Ed. 818 (1956).

For example, a crop farmer has no standing to allege that automobile manufacturers are in violation of antitrust laws by their alleged elimination of competition in air pollution devices, *In re Multidistrict Vehicle Air Pollution M.D.L. No. 31, supra;* or a stockholder for a corporation has no standing "to maintain an action in his own right, as a shareholder, when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists in the diminution in value of his corporate shares resulting from the impairment of corporate assets." *Kauffman v. Dreyfus Fund, Inc., supra,* at page 732.

The plaintiff's factual allegations are that as a direct result of the plaintiff's denial of free bargaining power due to the draft system, he signed with a franchisee which was not financially

stable and that this lead to a $60,000 injury. The plaintiff also alleges that he did believe that the defendant WTT was guaranteeing his contract at the time he entered into it. The plaintiff's injury, if proven, is a direct result of any alleged violations of § 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. *Mackey v. National Football League*, 407 F.Supp. 1000, 1975 (D.C.Minn.); *Robertson v. National Basketball Association*, 389 F.Supp. 867 (D.C.N.Y.1975).

The "target area" test requires that the plaintiff allege that the injury to his enterprise or business be within the commercial area in which the alleged antitrust violation attempted to interfere or hinder. *In re Multidistrict Vehicle Air Pollution M.D.L. No. 31, supra; Carnivale Bag Co., Inc. v. Slide-Rite Mfg. Corp., supra, Bray v. Safeway Stores, Inc.*, 392 F.Supp. 851 (D.C.Cal.,1975). This theory attempts to include all those intended to be protected by Congress.

> "The 'target area' approach provides a logical and flexible tool for analyzing whether a particular claimant falls within the class of persons slated by Congress for protection under section 4 of the Clayton Act." *In re Multidistrict Vehicle Air Pollution M.D.L. No. 31, supra,* at page 128.

As alleged, the plaintiff falls within the "target area" of the defendant WTT to restrain competition. The draft system employed by the defendants requires that a chosen player may only negotiate with a certain franchisee and no other. This would simply stifle any competition between the franchisees for obtaining players' services and it creates limitations to what a player may earn. Under both tests, then, the plaintiff does have standing to allege violations of § 1 of the Sherman Act, 15 U.S.C. § 1 and bring an action in this court under § 4 of the Clayton Act, 15 U.S.C. § 15.

Finally, the defendant argues that the plaintiff alleges no cause of action because (1) there was no express written or implied guaranty on their part insuring a salary payment to the plaintiff; and (2) there is no allegation of knowledge, reliance upon or consideration for any explicit guarantee.

Taking the allegations in the complaint as true and reviewing the deposition and affidavits of both parties, a determination on a motion to dismiss the complaint or even a rendering of summary judgment pursuant to Federal Rule of Civil Procedure 56 in favor of the defendant at this time may not be made because there are genuine issues of fact which at a later time may be proven or disproven.

Accordingly, the defendants' motion to dismiss will be denied.