**In re MAGIC MARKER SECURITIES LITIGATION.**

**J. L. WOLGIN et al.**

**v.**

**MAGIC MARKER CORPORATION et al.**

**Civ. A. No. 77–3155.**

United States District Court,
E. D. Pennsylvania.

June 25, 1979.

Sherrie R. Savett, Berger & Montague, Philadelphia, Pa., for plaintiffs.

Peter S. Greenberg, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendants.

## MEMORANDUM

LUONGO, District Judge.

Plaintiffs in this securities fraud class action are investors who purchased Magic Marker Corporation common stock during a period of alleged price manipulation. The third consolidated amended complaint alleges that over a period of nearly two years, some forty individuals and corporate defendants took part in a wide-ranging conspiracy to artificially inflate the price of Magic Marker stock. Although plaintiffs assert several bases for liability under the federal securities laws, they rely primarily on the implied private right of action under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1976), and Rule 10b–5, 17 C.F.R. § 240.10b–5 (1978). Certain defendants recently moved to dismiss on the ground that the exclusive remedy for the wrongs alleged in the complaint is the private civil action expressly authorized by section 9(e) of the 1934 Act, 15 U.S.C. § 78i(e) (1976). In an opinion and order issued on April 9, 1979, I ruled that plaintiffs could avail themselves of the implied remedies under section 10(b) and Rule 10b–5, notwithstanding the existence of an express remedy under section 9(e). *See Wolgin v. Magic Marker Corp.*, 82 F.R.D. 168, 180 (E.D.Pa.1979). Defendants now request that I certify this issue for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) (1976). For the reasons hereafter stated, I conclude that certification would be improper and that the motion must therefore be denied.

Section 1292(b) authorizes a district court judge to certify for appeal a nonfinal order that "involves a controlling question of law as to which there is substantial ground for difference of opinion," if he believes "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b) (1976). Although section 1292(b) was enacted in 1958, "no uniform analysis of when it is proper to certify an order for appeal has yet emerged." Note, *Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b)*, 88 Harv.L.Rev. 607, 607–08 (1975) (footnote omitted). Within this circuit, however, two pronouncements by the court of appeals govern the application of this provision. First, sec-

tion 1292(b) "is to be used only in exceptional cases." *Milbert v. Bison Laboratories, Inc.*, 260 F.2d 431, 433 (3d Cir. 1958). Second, the critical issue in each case is whether certification would promote the policies underlying interlocutory appeals, including "the avoidance of harm to a party pendente lite from a possibly erroneous interlocutory order and the avoidance of possibly wasted trial time and litigation expense." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 756 (3d Cir.) (en banc), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974).

■ My order of April 9, 1979, plainly "involves a controlling question of law," and plaintiffs do not seriously dispute the point. The court of appeals has stated that the term "controlling question of law" encompasses "at the very least every order which, if erroneous, would be reversible error on final appeal." *Katz v. Carte Blanche Corp., supra*, 496 F.2d at 755. If I erred in denying defendants' motion to dismiss, because section 9(e) is in fact the exclusive remedy available to plaintiffs, and if plaintiffs later obtained a favorable judgment based on the implied remedy under section 10(b) or Rule 10b–5, then my order would certainly be vacated on defendants' final appeal. Indeed, I said as much in my opinion of April 9, after explaining why I denied defendants' motion to dismiss:

> "I recognize, however, that the court of appeals may view the matter differently. I have therefore urged plaintiffs to amend their complaint to plead liability under section 9(e) as an alternative theory. I shall also enlist the aid of counsel in conducting this case in such a manner that all factual issues bearing on section 9(e) liability are presented to the jury during the trial. This approach should serve to obviate the need for a new trial in the event that the court of appeals ultimately accepts defendants' argument that section 9(e) provides the exclusive remedy for the wrongs alleged here." 82 F.R.D. 168 at 181.

Plaintiffs have since amended their complaint to add section 9(e) as an alternative basis of liability, so that a reversal on final appeal might not require a new trial. But if I erred in denying the motion to dismiss, then my order would still be reversible error, whether or not a new trial was necessary. Thus, under *Katz*, that order involved a "controlling question of law."

I also believe that "there is substantial ground for difference of opinion" as to the correctness of my order. Plaintiffs contest this point, and they reiterate the arguments they made concerning their right to proceed under section 10(b) and Rule 10b–5 in an effort to demonstrate that my order was indisputably correct. This approach misses the point. I have already resolved the legal issue in plaintiffs' favor by ruling that they could invoke the implied remedy under section 10(b) or Rule 10b–5. It does not follow that my ruling was so plainly correct as to admit of no differences of opinion. Moreover, I acknowledged in my opinion of April 9 that defendants' argument (in support of their motion to dismiss) had "considerable appeal," 82 F.R.D. 168 at 179, that it was difficult to reconcile section 9(e) with the two implied remedies just mentioned, *id.* at 180, and that the court of appeals might "view the matter differently" than I did. *Id.* at 181. In short, I recognized then, as I do now, that substantial ground exists for difference of opinion as to whether section 9(e) provides the exclusive remedy for plaintiffs. *See also Touche Ross & Co. v. Redington*, —— U.S. ——, ——, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).

■ Section 1292(b) limits certification to those instances where the district judge believes "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Application of this requirement inevitably calls for some predictions about the likely future course of the litigation, *Katz v. Carte Blanche Corp., supra*, 496 F.2d at 755, and the party seeking certification need not demonstrate that the litigation will *certainly* be expedited by an interlocutory appeal.

On the other hand, the moving party should come forward with something more than mere conjecture in support of his claim that certification may save the court and the parties substantial time and expense.

■ Defendants initially argued that "if the Court of Appeals determines that plaintiffs have no implied private right of action under Section 10(b), then a protracted trial in this Court and the extensive pretrial proceedings necessary in an action of this magnitude may be *totally avoided*." Defendants' Memorandum (Document No. 238) at 8 (emphasis supplied). Plaintiffs then, at my request, amended their complaint to plead section 9(e) as an alternate theory of liability. Thus, an interlocutory appellate reversal on the section 10(b) issue would leave plaintiffs' section 9(e) claims for trial. Although its exact size is unknown, the class that I certified numbers somewhere between several hundred and several thousand investors. Defendants now assert that *all* section 9(e) claims are time-barred, so that a motion to dismiss (following the appellate ruling) would obviate the need to try any claims. Plaintiffs respond that the doctrine of fraudulent concealment would call for tolling the limitations period, so that some or all of their section 9(e) claims would still be viable. At this point, I simply have no basis upon which to resolve these conflicting assertions. It would serve little purpose to hold a factual hearing on the statute of limitations issue, for the applicability of the fraudulent concealment doctrine to individual claims under section 9(e) presumably would have to be resolved on a plaintiff-by-plaintiff basis, and then only after the close of extensive discovery. I therefore see nothing more than conjecture in defendants' prediction that an immediate appeal (and a ruling that plaintiffs are limited to the section 9(e) remedy) might obviate the need for a trial. That conjecture cannot support a conclusion that the desired interlocutory appeal might materially advance the termination of this litigation.

Defendants also suggest that an immediate appellate ruling eliminating the section 10(b) claims, followed by dismissal of at least *some* section 9(e) claims as time-barred, would aid matters by making the trial of the remaining section 9(e) claims more manageable than the trial that is now anticipated. I am not persuaded that elimination of the section 10(b) theory would greatly simplify the trial, for plaintiffs' claims under sections 9(e) and 10(b) overlap one another to a large extent. *See* Note, *Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b)*, 88 Harv.L.Rev. 607, 621–22 (1975). Once the section 10(b) claims were eliminated, though, reducing the *number* of section 9(e) claims might help to simplify the trial. But the remaining section 9(e) plaintiffs presumably would still attempt to prove the entire wide-ranging conspiracy alleged in the complaint, so that any "savings" would probably be slight. In short, this alternative scenario offers only an insubstantial prospect of reducing litigation time and expense.

Finally, defendants argue that an interlocutory appeal would materially advance the termination of this litigation *even if* all the section 9(e) claims would remain for trial. Again, given the considerable overlap between the section 9(e) claims and the section 10(b) claims, I am skeptical of this prediction. Defendants urge that this result would occur because an appellate reversal on the section 10(b) issue would remove from the case certain complex issues that bear only on plaintiffs' claims under section 10(b). First, they contend that the statute of limitations issues presented in a section 9(e) case would be far simpler than those presented in a case involving claims under both sections 9(e) and 10(b). I agree that the section 10(b) claims may present more difficult *legal* issues, because section 10(b), unlike section 9(e), does not contain its own statute of limitations. Thus, resort to the statute of limitations (and the borrowing statute) of each concerned jurisdiction becomes necessary in a section 10(b) case. But I believe that extensive discovery would still be needed in order to resolve the limitations and tolling issues that bear on plaintiffs' section 9(e) claims, so that eliminating the section 10(b) claims seems unlikely to effect any great "savings" in discovery proceedings. And the "savings" that might result from eliminating *legal*

issues that relate only to the section 10(b) claims does not appear so great as to make this one of the "exceptional" cases where certification is appropriate. *Milbert v. Bison Laboratories, supra,* 260 F.2d at 433.

■ Defendants point to a second issue that might be eliminated through an interlocutory appeal. They argue that "the elimination of Section 10 claims from this case would eliminate the necessity for litigating two complex damage theories, at the likely elimination of much expense and confusion." Defendants' Reply Memorandum (Document No. 258) at 6. In my view, this is little more than an unsubstantiated assertion that plaintiffs' claims under section 9(e) and section 10(b) would, if successful, trigger completely different formulas for computing damages, and that the section 10(b) calculations, which by hypothesis could be avoided through an immediate appeal, would be "complex." Vague statements such as this afford no substantial basis for predictions regarding possible litigation economies.

In summary, none of defendants' contentions persuades me that the interlocutory appeal for which certification is sought might materially advance the ultimate termination of this litigation. Because this statutory requirement has not been satisfied, I am constrained to deny the motion for certification.