**John J. McNULTY**

v.

**BORDEN, INC.**

**Civ. A. No. 76-3952.**

United States District Court, E. D. Pennsylvania.

July 3, 1979.

On Motion for Reconsideration
Aug. 7, 1979.

---

Peter A. McGonigle, Clary, Mimnaugh & McGonigle, P.C., Philadelphia, Pa., for plaintiff.

Benjamin M. Quigg, Jr., James J. Rodgers, Morgan, Lewis & Bockius, Philadelphia, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiff has alleged antitrust violations and breach of contract and defamation claims in connection with the termination of his employment by the defendant. Before the Court is defendant's motion to dismiss plaintiff's second amended complaint pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons hereinafter set forth, defendant's motion will be denied with respect to each of plaintiff's claims.

■ For the purpose of a motion to dismiss, the material allegations of the complaint must be accepted as true and considered in a light most favorable to the plaintiff; a complaint should not be dismissed unless it appears to a certainty that the plaintiff is entitled to no relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); 2A Moore, *Federal Practice* ¶ 12.08, at 2271–74.

Plaintiff's allegations in his second amended complaint may be summarized as follows: Plaintiff was employed by Borden Foods, a division of Borden, Inc., from November 1961 until his discharge, as a retail salesman for one year and then as a Unit Manager of a territory encompassing parts of Delaware, Pennsylvania and New Jersey. As Unit Manager, plaintiff supervised several retail salesmen and was responsible for all sales in his territory of grocery and perishable items, including cheese. In addition to receiving a salary, plaintiff also received additional compensation in the form of bonuses by meeting quotas and winning sales contests. In the course of administering and handling certain accounts, plaintiff became aware that Eugene Matthews, District Manager for Borden Foods, personally,

or through other Unit Managers, offered special pricing arrangements, which included the granting of free goods and certain price reductions to certain accounts, such as Food Fair, but not to others, such as Acme Markets. Plaintiff refused to take part in the granting of these special pricing arrangements and, as a result, came into severe conflict with Mr. Matthews, who compiled a file designed to justify the dismissal of the plaintiff. Part of this file included the accusation of Mr. Matthews that plaintiff's negligence was responsible for the spoilage of $80,000 worth of cheese ordered by Acme Markets and that the plaintiff filed false reports in connection with this incident. In addition, the plaintiff claims that Mr. Matthews knowingly and maliciously spread false stories concerning the plaintiff's job performance in an effort to have the plaintiff dismissed and to prevent discovery of the special pricing arrangements. At a September 20, 1976 meeting in a hotel with Matthews and Walter Dyer, the Regional Manager, Eastern Region for Borden Foods, plaintiff was dismissed without first being placed on probation for 30 days and notified that his job performance was not satisfactory. At this meeting, plaintiff refused to accept 8 weeks severance pay in return for his release of all claims against the defendant and his agreement not to disclose any information concerning the special pricing arrangements.

In addition, the complaint alleges that the defendant's report in connection with plaintiff's termination states that plaintiff was negligent in performing his duties, and that plaintiff claimed he checked the warehouse which contained the cheese when he had not actually been there for three months. This version of the plaintiff's termination was communicated by the defendant's representatives to the Pennsylvania Unemployment Compensation Board as well as to several employees at Food Fair and Acme Markets. In addition, it is claimed that the defendant furnished a report to prospective employers of the plaintiff stating that plaintiff was dismissed because his job performance did not meet the defendant's standards.

Plaintiff further claims that he received many offers of employment while he was employed by the defendant, but rejected them in reliance on assurances that he would continue to be employed by the defendant and would probably advance to the position of District Manager or even higher.

In Count I of his complaint, plaintiff alleges that the special pricing arrangements adversely affected competition in the market for certain goods in violation of the antitrust laws and that his discharge and the accompanying untrue statements constitute acts performed in furtherance of the antitrust violations. In particular, plaintiff alleges that his discharge and the statements were designed to prevent discovery and prosecution of the illegal pricing scheme and to destroy plaintiff's credibility concerning such matters.

Count II of the complaint alleges that plaintiff's termination constituted wrongful breach of a contractual relationship.

Count III alleges that the defendant intentionally and maliciously libeled and slandered plaintiff by disseminating untrue accusations concerning him.

Plaintiff bases Count I of his complaint on section 4 of the Clayton Act, 15 U.S.C. § 15, and alleges that he was injured by reason of the defendant's violation of section 2 of the Clayton Act as amended by the Robinson-Patman Act, 15 U.S.C. § 13 (the Robinson-Patman Act). Section 4 of the Clayton Act provides:

Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

Section 2 of the Robinson-Patman Act, which is the statute that plaintiff claims forbids the conduct of the defendant, provides in pertinent part:

(a) It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between

different purchasers of commodities of like grade and quality . . . and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them. . .

Plaintiff claims that the special pricing arrangements offered by Mr. Matthews to certain accounts discriminated between different purchasers and lessened competition, thereby violating section 2. Plaintiff further contends that he was injured in his business or property by reason of the special pricing arrangements and that therefore he is entitled to recover treble damages pursuant to section 4 of the Clayton Act.

In its motion to dismiss, the defendant contends that plaintiff lacks standing to raise the antitrust claims inasmuch as plaintiff has not been injured "in his business or property" nor did the alleged injury occur "by reason of" the alleged antitrust violations. We disagree with the contentions of the defendant for the reasons hereinafter set forth. Defendant's motion to dismiss Count I of the complaint will therefore be denied.

To withstand a Rule 12(b)(6) motion to dismiss, a plaintiff who brings an action pursuant to section 4 of the Clayton Act must allege an injury to business or property by reason of an antitrust violation. The plaintiff's complaint, read in a light most favorable to him, alleges that the defendant violated the antitrust laws, in that the defendant engaged in offering special pricing arrangements which were discriminatory and lessened competition, and that plaintiff was discharged from his position of supervising retail salesmen to prevent discovery and prosecution of the antitrust violations and because plaintiff refused to participate in and objected to such antitrust violations, all of which resulted in the loss of bonus compensation as a result of diminished sales and in the loss of his job.

In analyzing whether plaintiff has standing to bring his antitrust action pursuant to section 4 of the Clayton Act, we are guided by recent decisions of our Third Circuit in cases such as *Bravman v. Bassett Furniture Industries, Inc.,* 552 F.2d 90 (3d Cir. 1977); *Cromar Co. v. Nuclear Materials & Equipment Corp.,* 543 F.2d 501 (3d Cir. 1976), and *Int'l Ass'n, etc. v. United Contractors Ass'n, Inc.,* 483 F.2d 384 (3d Cir. 1973), *amended,* 494 F.2d 1353 (1974). *See also Bogus v. American Speech & Hearing Ass'n,* 582 F.2d 277 (3d Cir. 1978). In *Bravman,* Judge Gibbons reviewed the prior decisions in this circuit concerning section 4 standing; he specifically rejected a per se rule that would deny standing to an employee or that would limit standing to competitors, and adopted the following balancing test enunciated by Judge Garth in *Cromar, supra,* 543 F.2d at 506:

Each case, therefore, must be carefully analyzed in terms of the particular factual matrix presented. In making this factual determination courts must look to, among other factors, the nature of the industry in which the alleged antitrust violation exists, the relationship of the plaintiff to the alleged violator, and the alleged effect of the antitrust violation upon the plaintiff. Then, while recognizing that breaches of the antitrust laws have effects throughout society, a court must decide whether this plaintiff is one "whose protection is the fundamental purpose of the antitrust laws." *In re Multidistrict Vehicle Air Pollution,* [481 F.2d 122] at 125 [(9th Cir.), *cert. denied,* 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336 (1973)].

In adopting this test, Judge Gibbons in *Bravman* stated that "§ 4 standing analysis is essentially a balancing test comprised of many constant and variable factors and . . . there is no talismanic test capable of resolving all § 4 standing problems." 552 F.2d at 99. In *Bravman,* the Court found section 4 standing in an action brought by a manufacturer's sales representative against the manufacturer which he represented, where it was alleged that the manufacturer had committed antitrust

violations by restraining the plaintiff from dealing with other manufacturers and by limiting him to sales in a specified territory. On the basis of his examination of Bravman's relationship to the manufacturer, Bravman's position in the area affected by the alleged anticompetitive acts and the directness of the injury to plaintiff, as well as the Congressional policies underlying section 4, Judge Gibbons concluded that Bravman had section 4 standing.

To determine whether plaintiff has standing to bring this action, we shall, therefore, examine the plaintiff's allegations in accordance with the test enunciated by Judge Garth in *Cromar* and applied by Judge Gibbons in *Bravman.* We shall proceed, therefore, to examine and weigh all of the plaintiff's allegations to determine whether the plaintiff has standing in accordance with section 4 of the Clayton Act, which confers standing on "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws."

As a first step in our analysis, we have considered the recent decision of the United States Supreme Court in *Reiter v. Sonotone Corp.,* —— U.S. ——, 99 S.Ct. 2326, 60 L.Ed. 931 (1979). In *Reiter,* in discussing the meaning of the phrase "business or property" as used in section 4 of the Clayton Act, the Court reasoned that the word "or" in section 4 makes it clear that the word "business" was not intended to modify the word "property," nor was "property" intended to modify "business." In rejecting an interpretation of section 4 which would require an injury to "business activity or property related to one's business," Chief Justice Burger [1] stated:

> That strained construction would have us ignore the disjunctive "or" and rob the term "property" of its independent and ordinary significance; moreover, it would convert the noun "business" into an adjective. In construing a statute we are obliged to give effect, if possible, to every

word Congress used. Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise; here it does not. Congress' use of the word "or" makes plain that "business" was not intended to modify "property," nor was "property" intended to modify "business." *Id.* at ——, 99 S.Ct. at 2331 (citations omitted).

In *Reiter,* the Court held that consumers who were forced to pay illegally fixed higher prices for hearing aids and related services which they purchased from retail dealers of the manufacturers of the hearing aids had standing under section 4 in that a consumer whose money has been diminished has been injured "in his property." *Id.* at ——, 99 S.Ct. 2326. It should therefore follow that an employee who suffers the loss of his job has been injured in his property. Furthermore, prior to *Reiter,* Judge Forman, in *Int'l Ass'n, Etc. v. United Contractors Ass'n, Inc.,* 483 F.2d 384 (3d Cir. 1973), *amended,* 494 F.2d 1353 (1974), had little difficulty in determining that the loss of employment is an injury to a person's "business or property," citing with approval *Nichols v. Spencer Int'l Press, Inc.,* 371 F.2d 332, 334 (7th Cir. 1967), wherein the Seventh Circuit stated that "the interest invaded by a wrongful act resulting in loss of employment is so closely akin to the interest invaded by impairment of one's business as to be indistinguishable in this context." That the loss of employment constitutes an injury to one's business or property is also supported by other cases within and without this circuit. *See Quinonez v. Nat'l Ass'n of Securities Dealers, Inc.,* 540 F.2d 824, 829–30 (5th Cir. 1976); *Tugboat, Inc. v. Mobile Towing Co.,* 534 F.2d 1172, 1176 (5th Cir. 1976); *Dailey v. Quality School Plan, Inc.,* 380 F.2d 484 (5th Cir. 1967); *Roseland v. Phister Manufacturing Co.,* 125 F.2d 417 (7th Cir. 1942); *DeGregorio v. Segal,* 443 F.Supp. 1257, 1261 (E.D.Pa.1978); *Broyer v. B. F. Goodrich Co.,* 1977–1 Trade Cases ¶ 61,346 (E.D.Pa.1977); *Drysdale v. Florida*

---

1. All members of the Court joined in the opinion of Chief Justice Burger except Justice Brennan who took no part in the decision of the

case. Justice Rehnquist filed a concurring opinion.

*Team Tennis, Inc.,* 410 F.Supp. 843 (W.D. Pa.1976). In addition to alleging the loss of his employment, the plaintiff claims the loss of bonus compensation while employed as a result of diminished sales in his territory. The loss of such bonus compensation is an additional factor which the Court has considered in making a determination as to whether the plaintiff has section 4 standing. As stated by Judge Bell in *Dailey v. Quality School Plan, Inc., supra,* 380 F.2d at 487:

> [T]he loss of employment by a sales supervisor is injury to business or property within the meaning of § 4. [citations]

> These commission sales agent cases where a territory has been developed and where the courts treat the relationship as the business of the salesman or sales manager are to be distinguished from those cases where the business or property is that of the corporation and the claim asserted by stockholders or creditors or employees is derivative. [citations]

*See also* P. Areeda & D. Turner, *Antitrust Law,* vol. 2, § 338, at 198 (1978).

In the process of analyzing this case in terms of the factual matrix presented by the allegations of the complaint, we next consider whether the plaintiff's alleged injuries to his "business or property" resulted "by reason of anything forbidden in the antitrust laws." This requirement for section 4 standing has been given a variety of labels by the courts. As Judge Gibbons states in *Bravman,* "Some courts have enunciated these limitations on § 4 standing under the rubric of 'direct injury,' others have used the expression 'target area,' and more recently one court has used the term 'zone of interest.'" 552 F.2d at 96–97 (footnotes omitted). In *Bravman* and *Cromar* this factor is referred to as the "directness of the injury" claimed to have resulted from the alleged antitrust violation. The plaintiff claims that as a direct result of the antitrust violation he was discharged from his position of supervising retail salesmen for the purpose of preventing discovery and prosecution of the antitrust violations and because he refused to participate in and objected to the antitrust violations. Plaintiff has also alleged that on the day his employment was terminated he was asked to sign papers which sought to prohibit him from disclosing the alleged antitrust violation. There is no question, therefore, that in our consideration of the "directness of the injury" factor the plaintiff has clearly alleged that the loss of his employment was a direct result of the antitrust violations. Additionally, we have taken into consideration the fact that the plaintiff claims that as a result of the alleged antitrust violations he also lost certain bonus compensation. *See, e. g., Dailey v. Quality School Plan, Inc., supra.*

Finally, in applying the *Cromar-Bravman* analysis, we must consider the Congressional policies underlying section 4 and determine whether the plaintiff is "one whose protection is the fundamental purpose of the antitrust laws." *Bravman, supra,* 552 F.2d at 99; *Cromar, supra,* 543 F.2d at 506 (quoting *In re Multidistrict Vehicle Air Pollution,* 481 F.2d 122, 125 (9th Cir.), *cert. denied,* 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336 (1973)). As heretofore pointed out, the plaintiff claims that the defendant violated the antitrust laws by offering discriminatory pricing arrangements and that the defendant fired him in order to prevent discovery and prosecution in connection with the alleged antitrust violations and because the plaintiff refused to participate in and objected to the illegal activity. We must determine whether Congress, in enacting section 4, intended to grant standing to a person such as the plaintiff. Although neither party to this action has called this Court's attention to anything in the legislative history of section 4 which is dispositive of whether Congress intended to confer standing on, and thereby protect, an employee who refused to participate in an illegal pricing arrangement or any other type of antitrust violation, it would be difficult for this Court to conclude that Congress intended to exclude from the remedies provided by section 4 an employee discharged by a defendant for the purpose of preventing discovery and prosecution of antitrust violations and because that employee refused to participate in the illegal activity.

Congress created the treble damage remedy of section 4 for the obvious purpose of encouraging individuals to challenge antitrust violations. The treble damage remedy, originally enacted in 1890 as section 7 of the Sherman Act, was intended by Congress as an antitrust weapon "available to the people." 21 Cong.Rec. 3146 (1890). Section 4 of the Clayton Act, which superseded section 7 of the Sherman Act, was intended to "open the door of justice to every man, whenever he may be injured by those who violate the antitrust laws." 51 Cong.Rec. 9073 (1914). The importance of the deterrence policy of section 4 has been stressed repeatedly by the courts. The Supreme Court in *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977), after examining the legislative history of section 4 of the Clayton Act, stated that it was "conceived primarily as open[ing] the door of justice to every man . . . and giv[ing] the injured party ample damages for the wrong suffered." *Id.* at 486 n. 10, 97 S.Ct. at 696 (quoting 51 Cong.Rec. 9073 (1914)). In answer to the defendant's contention that a determination that the plaintiff has section 4 standing will significantly burden crowded court dockets, we again refer to the recent decision of the United States Supreme Court in *Reiter v. Sonotone Corp.,* —— U.S. ——, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979), where the Court responded to such a contention by stating:

> That may well be true but cannot be a controlling consideration here. We must take the statute as we find it. Congress created the treble-damages remedy of § 4 precisely for the purpose of encouraging *private* challenges to antitrust violations. These private suits provide a significant supplement to the limited resources available to the Department of Justice for enforcing the antitrust laws and deterring violations. . . . To be sure, these private suits impose a heavy burden on the federal courts; it is the clear responsibility of Congress to provide the

judicial resources necessary to execute its mandates. *Id.* at —— – ——, 99 S.Ct. at 2333–34(emphasis in original).

Further, one cannot ignore the broad scope of the "any person" wording of section 4, particularly in light of the absence of any language of limitation in that section. As the Supreme Court declared in *Radovich v. National Football League,* 352 U.S. 445, 454, 77 S.Ct. 390, 395, 1 L.Ed.2d 456 (1957), courts "should not add requirements to burden the private litigant beyond what is specifically set forth by Congress in those [antitrust] laws." We conclude, therefore, that the plaintiff's complaint sufficiently portrays "one whose protection is the fundamental purpose of the antitrust laws."

Having completed the analysis of plaintiff's allegations and having weighed the factors delineated in *Cromar* and *Bravman,* we conclude that the plaintiff has standing pursuant to section 4 of the Clayton Act.

In Count II of his complaint, plaintiff alleges that his discharge from employment with the defendant constituted a wrongful breach of a contractual relationship. Specifically, plaintiff alleges that his discharge "was effectuated in a manner in violation of the standard corporate policy and procedure on employee termination, without opportunity for the Plaintiff to offer any defense, without proper hearing, contrary to oral assurances made to him by Borden and relied upon by him. . . ." Complaint ¶ 36.

▮ Under Pennsylvania law[2] an employment contract which contains no specific provision respecting duration or termination is presumed to be terminable at will by either party for any or no reason, unless the party asserting a contrary construction can offer evidence to rebut the presumption. *Bravman v. Bassett Furniture Industries, Inc., supra,* 552 F.2d at 92; *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174, 176 (1974); *Lubrecht v. Laurel Stripping Co.,* 387 Pa. 393, 396, 127 A.2d 687, 689

---

**2.** There is no dispute that Pennsylvania law applies to the wrongful breach of contractual relationship claim alleged in Count II of the complaint. The Court has diversity jurisdiction of this claim.

(1956). The plaintiff may overcome this presumption by showing the intent of the parties that the contract last for some definite period of time or for a reasonable time, or by showing that the plaintiff-employee gave the defendant-employer consideration in addition to the employee's normal services, such as sacrificing other employment opportunities. *See, e. g., Marder v. Conwed Corp.,* 75 F.R.D. 48, 55–57 (E.D.Pa.1977). Plaintiff's complaint clearly alleges that plaintiff, during his period of employment with the defendant, rejected many other offers of employment, both within and outside the food industry, in reliance upon representations made to him by his superiors that he would eventually be promoted to at least the position of District Manager and possibly higher. Complaint ¶ 32. If these allegations were established at trial, it would not be unreasonable for a trier of fact to conclude that the parties intended plaintiff's employment to extend for a reasonable time or that plaintiff's sacrifice of other employment opportunities constituted additional consideration rendered by the plaintiff, thereby extending the duration of the employment contract for a reasonable period of time. *See Bravman v. Bassett Furniture Industries, Inc., supra,* 552 F.2d at 93; *O'Neill v. ARA Services, Inc.,* 457 F.Supp. 182, 185 (E.D.Pa.1978). Thus, Count II of the complaint states a claim for wrongful breach of a contractual relationship upon which relief can be granted and should not be dismissed.

■ Even if the plaintiff has not sufficiently alleged either that the parties intended that the contract last for a reasonable period of time or that he gave additional consideration, thereby extending the contract, Count II should not be dismissed for another reason. Although the Pennsylvania Supreme Court in *Geary v. United States Steel Corp., supra,* held narrowly that an employee at will generally has no right of action against his employer for wrongful discharge, it suggested that a discharge might plausibly give rise to a cause of action where the employer is motivated by a specific intent to cause harm to the employee or where a clear mandate of public policy is violated by the discharge. *Id.* 456 Pa. at 178, 319 A.2d 174; *see O'Neill v. ARA Services, Inc., supra,* 457 F.Supp. at 186; *Reuther v. Fowler & Williams, Inc.,* 255 Pa.Super. 28, 386 A.2d 119, 120 (1978). Plaintiff in the instant case alleges that defendant discharged plaintiff because of his refusal to cooperate in the special pricing arrangements and in order to prevent discovery of and interference with the pricing scheme. This allegation, together with the allegation that defendant made false statements to others which were designed maliciously to injure plaintiff's ability to obtain new employment, if proved at trial, could support a conclusion by the trier of fact that defendant's discharge of plaintiff was motivated by a specific intent to cause harm to the plaintiff. Furthermore, plaintiff has alleged that a clear mandate of public policy has been violated by the discharge for two reasons. Plaintiff contends first that he was discharged because of his refusal to commit a crime, and, second, that his discharge was an act in furtherance of the allegedly illegal pricing scheme.[3] *See Broyer v. B. F. Goodrich Co.,* C.A. No. 75–2288 (E.D.Pa. Jan. 11, 1978) (Bench Memorandum); *Reuther v. Fowler & Williams, Inc., supra,* 386 A.2d at 120 (employee discharged for serving jury duty); *Petermann v. Int'l Brotherhood of Teamsters,* 174 Cal. App.2d 184, 344 P.2d 25 (1959) (employee discharged for refusal to commit perjury); *Frampton v. Central Indiana Gas Co.,* 260 Ind. 249, 297 N.E.2d 425 (1973) (employee discharged for filing claim against employer under workmen's compensation statute); *Monge v. Beebe Rubber Co.,* 114 N.H. 130, 316 A.2d 549 (1974) (employee discharged for refusal to accept social invitations of foreman).

---

**3.** The Court notes that failure to adhere to certain stated guidelines or policies by an employer in discharging an employee does not create a cause of action for breach of an employment contract. *See Beidler v. W. R. Grace, Inc.,* 461 F.Supp. 1013, 1015 (E.D.Pa.1978) and cases cited therein.

Defendant's motion to dismiss Count II of the complaint for failure to state a claim upon which relief can be granted must, therefore, be denied.

In Count III of his complaint, plaintiff alleges that "[b]y virtue of the knowing and malicious dissemination of untrue accusations concerning the Plaintiff . . . Defendant has intentionally and maliciously libeled and slandered Plaintiff. . . ." Complaint ¶ 38. Plaintiff specifically alleges that Borden's version of plaintiff's discharge, which included representations that plaintiff was negligent in performing his duties and was responsible for, and made false statements in connection with, the spoiling of $80,000 worth of cheese, was communicated by Mr. Matthews and other Borden representatives to the Pennsylvania Unemployment Compensation Board, to prospective employers, and to identified employees of Food Fair and Acme Markets. Complaint ¶¶ 28–30. Plaintiff also alleges that these false statements were communicated maliciously and were intended to injure plaintiff's ability to obtain new employment, and that these statements have in fact injured his good name and business reputation and prevented him from obtaining employment.

 To state a cause of action for defamation, generally the plaintiff must allege the defamatory character of the communication, publication, that the communication refers to the plaintiff, the third-party's understanding of the communication's defamatory character and its reference to the plaintiff, and injury; malice is essential to an action for defamation in Pennsylvania.[4] *Quinones v. United States,* 492 F.2d 1269, 1274 (3d Cir. 1974); *Keddie v. Pennsylvania State University,* 412 F.Supp. 1264, 1276 (E.D.Pa.1976); *Corabi v. Curtis Publishing Co.,* 441 Pa. 432, 273 A.2d 899 (Pa.1971); *see*

12 P.S. § 1584a. Plaintiff's allegations include each of these elements which he will have the burden of proving at trial. Furthermore, the statements complained of are clearly capable of defamatory meaning. *See Fram v. Yellow Cab Co.,* 380 F.Supp. 1314, 1326–27 (W.D.Pa.1974); *Vitteck v. Washington Broadcasting Co., Inc.,* 389 A.2d 1197, 1199 (Pa.Super.1978). Therefore, defendant's motion to dismiss Count III of the complaint must be denied.[5]

Accordingly, an order will be entered denying defendant, Borden, Inc.'s, motion to dismiss the complaint for failure to state a claim upon which relief can be granted.

## ON MOTION FOR RECONSIDERATION

In this action plaintiff has alleged antitrust violations and breach of contract and defamation claims in connection with the termination of his employment by the defendant. The defendant moved to dismiss each of the three counts of the second amended complaint. In an order dated July 3, 1979, the Court denied the defendant's motion to dismiss as to each count. The defendant has moved for reconsideration of the Court's order denying defendant's motion to dismiss or for certification pursuant to 28 U.S.C. § 1292(b) with respect to the antitrust and breach of contract claims. The Court will deny the defendant's motion for reconsideration of this Court's order and, for the reasons hereinafter set forth, will deny the defendant's motion for certification pursuant to 28 U.S.C. § 1292(b).

 In its motion for certification pursuant to 28 U.S.C. § 1292(b), the defendant requests this Court to certify for immediate appeal the issues raised by the defendant's motion to dismiss counts 1 and 2 of the complaint, which set forth the plaintiff's antitrust and breach of contract claims, respectively. The defendant does not request

---

4. There is no dispute that Pennsylvania law applies to the defamation claim alleged in Count III of the complaint.

5. Despite defendant's contention that communications to the Unemployment Compensation Board and to prospective employers are privileged, *see, e. g., Underwood v. Maloney,* 152

F.Supp. 648, 682 (E.D.Pa.1957) (citing *Wagner v. Bell,* 70 D&C 411 (C.P.Lehigh 1949)), the motion to dismiss the defamation claim must nevertheless be denied because plaintiff has alleged communication of the alleged defamatory statements to employees of Food Fair and Acme Markets.

this Court to certify for immediate appeal any issues connected with the defamation claim set forth in count 3 of the complaint. The issue in connection with count 1 is whether an employee who alleges that he was discharged to prevent discovery and prosecution of an illegal pricing scheme conducted by his employer and who alleges further that he lost certain bonus compensation as a result of the illegal pricing scheme has antitrust standing pursuant to section 4 of the Clayton Act, 15 U.S.C. § 15. The issue in connection with count 2 is whether an employee who alleges that his employer discharged him with specific intent to harm him, that he rejected many offers of employment while employed by the defendant, and that his discharge violated clear mandates of public policy has stated a claim for breach of a contractual relationship upon which relief can be granted.

Section 1292(b) provides as follows:

(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

Thus, a district court judge is authorized pursuant to section 1292(b) to certify for appeal a nonfinal order that involves a controlling question of law as to which there is substantial ground for difference of opinion if he believes that an immediate appeal from the order may materially advance the ultimate termination of the litigation. Section 1292(b) is to be used only in exceptional cases, *Milbert v. Bison Laboratories, Inc.,* 260 F.2d 431, 433 (3d Cir. 1958) (*en banc*), and the critical issue in each case is whether certification would promote the policies underlying interlocutory appeals, including the avoidance of harm to a party pendente lite from a possibly erroneous interlocutory order and the avoidance of possibly wasted trial time and litigation expense, *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 756 (3d

Cir.) (*en banc*), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974). *See In re Magic Marker Securities Litigation,* 472 F.Supp. 436 (E.D.Pa.1979).

■ The Court's order denying the defendant's motion to dismiss counts 1 and 2 of the complaint clearly involved controlling questions of law as to which there are substantial grounds for difference of opinion. This Court is well aware of the paucity of authority holding that an employee allegedly discharged for the purpose of preventing the discovery and prosecution of antitrust violations has section 4 standing. Although we endeavored to apply the balancing test for standing as established in *Bravman v. Bassett Furniture Industries, Inc.,* 552 F.2d 90 (3d Cir.), *cert. denied,* 434 U.S. 823, 98 S.Ct. 69, 54 L.Ed.2d 80 (1977), and *Cromar Co. v. Nuclear Materials & Equipment Corp.,* 543 F.2d 501 (3d Cir. 1976), we are not unmindful that others applying the same test might determine that plaintiff lacked standing. The same may be said of the issue concerning the breach of contract claim. However, recognition by the district court that its order involves a controlling question of law as to which there is substantial ground for difference of opinion does not mandate certification for immediate appeal pursuant to 28 U.S.C. § 1292(b). The district judge must also certify that in his opinion "an immediate appeal from the order may materially advance the ultimate termination of the litigation." It is our opinion that in this particular case immediate appeal will not materially advance the ultimate termination of the litigation, particularly since there is a third count in this complaint—the defamation claim—concerning which there is no substantial ground for difference of opinion as to any controlling question of law. The defendant does not request certification concerning the denial of its motion to dismiss count 3. The trial of the defamation portion of this action will involve substantially the same evidence as will be required for the trial of counts 1 and 2. An immediate appeal therefore does not eliminate the necessity for trial nor does it appear that it would significantly simplify

or abbreviate the trial. Furthermore, in considering the motion of the defendant to dismiss counts 1 and 2, the Court was required to consider the allegations of the complaint in a light most favorable to the plaintiff and the Court's denial of the motion to dismiss these counts in no way expresses an opinion as to whether the plaintiff will be able to sustain his burden to prove such allegations.