**Hugh W. LEVEY, et al.**

**v.**

**E. STEWART MITCHELL, INC., et al.**

**Civ. No. Y-83-2856.**

United States District Court,
D. Maryland.

April 19, 1984.

fendants E. Stewart Mitchell, Inc. and Barton S. Mitchell.

Judah Lifschitz, Washington, D.C., and Alan I. Baron, Baltimore, Md., for defendant John Driggs Company, Inc.

Plato Cacheris, Washington, D.C., and Larry S. Gondelman, Washington, D.C., for defendant John Driggs.

Robert G. Levy, Berryl A. Speert, and Allan P. Hillman, Baltimore, Md., for defendants Arundel Asphalt and Vaseleos Colevas.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Hugh W. Levey and the Contee Financial Corporation have brought this action for damages against three groups of defendants for violation of the federal antitrust laws, violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), violations of state antitrust provisions, and common-law fraud. The action was brought against John Driggs Co. and its president, John Driggs; the E. Stewart Mitchell Co., Inc. and its president, Barton S. Mitchell; and Arundel Asphalt Products, Inc. and its president Vaseleos Colevas (misidentified in the original complaint as "William 'Billy' Colevas"). The action springs from bid-rigging on road construction projects. Two groups of defendants (Mitchell and its president, Arundel and its president) have admitted participating in the conspiracy to fix the award of the contracts. The third group—Driggs and its president—were acquitted of criminal charges in a trial last January (Criminal Number Y-83-00312).

Currently before the Court are motions to dismiss filed by all of the defendants and a motion for summary judgment filed by Arundel Asphalt and joined in by the other defendants. Several alternative grounds are claimed by the defendants. However, the Court need only discuss the standing of the plaintiffs to bring this case under RICO and the federal antitrust laws, since dismissal of the claims on these grounds will

MacKenzie Canter, III, Washington, D.C., and James P. Sullivan, Rockville, Md., for plaintiffs.

Thomas M. Downs, Annapolis, Md., and George A. Nilson, Baltimore, Md., for de-

dissolve pendent jurisdiction on the state claims and require dismissal of this action.

## FACTUAL BACKGROUND

■ Because the plaintiffs' claim of standing is somewhat complex, a thorough discussion of their allegations with regard to the underlying violations, and to links between the claimed damages and those violations, is necessary. Of course, this Court may only dismiss the complaint if it appears to a certainty that the plaintiffs are not entitled to recover under any set of facts which can be proved to support the allegations of the complaint. *Hospital Building Co. v. Rex Hospital Trustee*, 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976).

■ The underlying acts which constitute the basis of the plaintiffs' allegations occurred in 1978. A road construction company, called Contee Sand & Gravel, had bid on several state and local government road construction projects, and had been awarded the contracts. In order to secure the contracts, "Sand & Gravel" was required to furnish performance bonds guaranteeing successful completion of the jobs. Sand & Gravel's performance bonds were furnished by the Fidelity and Deposit Company. Sand & Gravel went out of business, before even commencing work on at least some of the contracts it had been granted, and Fidelity and Deposit was forced to seek a second set of bids on the contracts it had guaranteed. With respect to at least one of those contracts, Colevas and Mitchell have admitted that they conspired, on behalf of their firms, to rig the bids that were submitted. At Driggs' criminal trial, Mitchell testified that Driggs also had been involved, and had submitted a bid higher than Mitchell's (a "complementary bid") at his request. There would appear to be no question that such price-fixing is a *per se* violation of § 1 of the Sherman Act (15 U.S.C. § 1) entitling an appropriate plaintiff to recover in a private treble-damages suit.

The remaining question is whether the plaintiffs are the appropriate parties to be bringing this action, particularly since Fidelity and Deposit Company—which was forced to pay the difference in price between the original contracts and the contracts which were awarded—has brought its own treble-damages action. Civil Number Y-83-2815. Levey claims standing to sue the defendants as the primary investor in and guarantor of certain loans to companies which succeeded Sand & Gravel. The issue of his standing is the subject of the defendants' motion to dismiss. Contee Financial claims standing as the successor of Sand & Gravel, (also the subject of the motion to dismiss), and as the assignee of certain causes of action on behalf of Fidelity and Deposit (this standing claim is the subject of the summary judgment motion).

As to the standing of Levey and Contee Financial—without regard to any alleged assignment—the following chain of circumstances is alleged in the complaint. As part of furnishing the performance bond, Fidelity and Deposit required Sand & Gravel to sign an indemnification agreement. After reletting the bids and awarding them at a higher cost than guaranteed, Fidelity and Deposit was forced to fund the difference, and Fidelity and Deposit then sued Sand & Gravel for the $6 million cost increase under the indemnity agreement. The plaintiffs allege that the $6 million increase in price was caused entirely by the collusive activities of the defendants. The plaintiffs then allege that the lawsuit by Fidelity and Deposit severely handicapped Contee Sand & Gravel, so a committee of creditors was formed, which negotiated a "Composition Agreement." Contee Financial was organized to take the assets of Sand & Gravel and to pay off the creditors at the rate of 10 percent. Levey says he was essentially forced—because of his heavy investment in the corporate owner of Sand & Gravel—to guarantee Contee Financial's debts to the creditors. Contee Financial was eventually forced to pay Fidelity and Deposit $590,000 on the $6 million difference between the original contract prices and the prices at which the defaulted contracts were re-awarded. The plaintiffs also claim that the same chain of

circumstances forced Levey to pay about $3 million on a loan made by the Union Trust Company of Maryland to Sand & Gravel.

As for the assignment claim, which is the subject of the defendants' summary judgment motion, the complaint alleges that, as part of the agreements between Fidelity and Deposit and Contee Financial, Fidelity and Deposit assigned all of its claims "against one or more debtors"—and its collateral held for Sand & Gravel—to Contee Financial.

The defendants appear to agree that the appropriate party to be bringing the claims against them is Fidelity and Deposit, and they would agree that if Fidelity and Deposit has assigned its claim to Contee Financial, it would be appropriate for Contee Financial to be bringing this action. However, the defendants have also made a persuasive showing that the only claims assigned by Fidelity and Deposit to Contee Financial were the claims which were held originally by Sand & Gravel (not an appropriate plaintiff in this case) and the claims of Fidelity and Deposit against Sand & Gravel.

The Court will first address whether Levey or Contee Financial has standing to bring this claim, without regard to the alleged assignment, and then review the materials submitted with regard to the alleged assignment, and explain why summary judgment is appropriate.

## STANDING/"ILLINOIS BRICK"

The Court has determined that, absent a valid assignment of Fidelity and Deposit's cause of action, the plaintiffs are barred from pursuing this private treble damages antitrust action because of the rationale of *Illinois Brick v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), (which forbid indirect purchasers of construction supplies from pursuing private antitrust actions for treble damages because the plaintiffs' damages had been only increased costs passed through by the direct purchaser), and because the plaintiffs here are too remote from the transactions which allegedly violated the antitrust laws.

The Supreme Court recently described both of these limitations—standing and the "Illinois Brick" doctrine—as it restricted the classes of people entitled to seek treble damages under the antitrust laws of the United States. *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982). In *Blue Shield*, the Court clearly noted that one prong of the limitations test concerns itself with duplicative recovery—ensuring that there are not two sets of plaintiffs going after the same defendant for the same acts (the *Illinois Brick* doctrine). 457 U.S. at 474, 102 S.Ct. at 2546. Then, the Court added, there is the

> conceptually more difficult question "of which persons have sustained injuries too remote [from an antitrust violation] to give them standing to sue for damages under § 4." *Id.* at 476, 102 S.Ct. at 2548.

In addressing the *Illinois Brick* doctrine, the plaintiffs first correctly argue that it does not cover standing. However, that does not affect the propriety of a motion to dismiss based on a plaintiff's failure to distinguish himself from the category of plaintiffs barred from recovery by the doctrine. As mentioned in *Blue Shield*, 457 U.S. at 474, 102 S.Ct. at 2546, the primary thrust of the *Illinois Brick* doctrine is to prevent duplicative recovery. In this case, it would appear that the risk of duplicative recovery is particularly strong, assuming—for the time being—that Fidelity and Deposit has not assigned its claim to Contee Financial. As mentioned earlier, Fidelity and Deposit is seeking treble damages in a separate private action based on precisely the same acts, and substantially the same injury.

The plaintiffs have argued that *Illinois Brick* is not applicable in this context, since that case covered only indirect purchasers of price-fixed goods. However, the discussion of *Illinois Brick* in *Blue Shield*, which involved allegations of an economic boycott in the service area, indicates that the Court feels *Illinois Brick* has broader application than simply preventing indirect purchasers

of price-fixed goods from maintaining actions for damages under the antitrust laws.

The second prong of the limitation on possible plaintiffs suing for antitrust injuries is the remoteness of injury test. There have been a number of different formulations of this test, as noted by the Supreme Court in *Blue Shield:*

> Among the tests employed by the lower courts are those that focus on the "directness" of the injury, ... on its foreseeability, ... or on whether the injury is "arguably ... within the zone of interests protected by the [antitrust laws]." ... See also n. 14, *infra* ("target area" test). The Third Circuit has concluded that § 4 standing analysis is essentially a balancing test comprised of many constant and variable factors and that there is no talismanic test capable of resolving all § 4 standing problems. *Blue Shield,* 457 U.S. at 476, 102 S.Ct. at 2547.

The Supreme Court expressly declined to choose among the tests in *Blue Shield:*

> We have no occasion here to evaluate the relative utility of any of these possibly conflicting approaches towards the problem of remote antitrust injury. *Id.*

Instead, the Court proceeded to analyze the plaintiff's position—and find it tenable—under several of these tests.

A combination of the different tests was also applied by the Supreme Court in *Associated Gen. Contractors v. California Council,* 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). In that case, a union of carpenters and other construction workers challenged a trade group which the union alleged was using heavy-handed tactics to steer work away from the union. The tests applied by the court in determining that the union did not constitute a person injured by an antitrust violation included whether the plaintiff was a consumer or competitor in the market in which the trade was restrained (the "target area" test), whether the injury was direct or indirect, whether the damages were speculative, and the risk of complex apportionment of damages. The court's language with respect to the "direct injury" test is applicable to the allegations of the plaintiffs here:

> In this case, the chain of causation between the Union's injury and the alleged restraint in the market for construction subcontractors contains several somewhat vaguely defined links. 459 U.S. at 540, 103 S.Ct. at 910.

■ There is no question that Fidelity and Deposit was the direct victim of any collusion on the part of the defendants, as it was forced to pay the difference between the price which Sand & Gravel had contracted for and the bids that it accepted for the defaulted contracts. The links between Fidelity and Deposit and Levey are at best "vaguely defined," and are certainly remote. Outside an assignment, the links to Contee Financial are nearly as tenuous. The risk of complex apportionment of damages is serious, in this case, since allowing both Fidelity and Deposit and the plaintiffs to seek recovery from the defendants would require the court to unravel not only exactly how much the collusion had added to Fidelity and Deposit's costs, but how much of the increase in cost was passed through to the plaintiffs. Indeed, it is not clear that either of the plaintiffs would succeed in the "target area" test, although Contee Financial, as the successor of Contee Sand & Gravel, would appear to have been a consumer or competitor. In view of the remoteness of the injury claimed by the plaintiffs, and the potential for duplicative recovery, the Court finds that the plaintiffs are barred from maintaining this private antitrust action for damages.

■ Not many courts have addressed whether particular plaintiffs have standing under RICO to make private claims for damages. However, at least one court has held that those indirectly injured by racketeering activities may not maintain a private action under RICO. *Cenco, Inc. v. Seidman & Seidman,* 686 F.2d 449 (7th Cir. 1982). Seidman was an accountant who alleged that he had been used as an "unwitting tool" by the RICO enterprise. The court there held that those indirectly injured as a result of the RICO enterprise

would not have standing to sue. Here, the plaintiffs can only make out a claim that they were indirectly injured by the defendants' activities.

Having found there is no standing for the plaintiffs to assert either their RICO or Sherman Act claims, the pendent state-law claims must also be dismissed.

 Certainly, if the federal claims are dismissed before trial,

> even though not insubstantial in a juris-dictional sense, the state claims should be dismissed as well. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

## ASSIGNMENT

 The entire previous discussion, finding that the plaintiffs do not have standing in their own right to maintain this suit, does not require the dismissal of plaintiff Contee Financial's action for treble damages if, in fact, Contee Financial is the assignee of the cause of action of Fidelity and Deposit, and Contee Financial is therefore standing in the shoes of the victim directly injured by the defendants' alleged collusive activity. The complaint makes such a claim, and it was endorsed by counsel for the plaintiffs at a hearing on the motion for summary judgment. However, the documents which would support such a claim clearly indicate that Contee Financial is the assignee of only two types of claims: those which Contee Sand & Gravel might have had against the defendants, and transferred to Fidelity and Deposit, and those which Fidelity and Deposit might have had against "one or more debtors," which, in this case, were Contee Sand & Gravel and its subsidiaries. At no point did Fidelity and Deposit assign to Contee Financial its claim against the defendants here.

The first matter to be taken up is the assignment by Fidelity and Deposit to Contee Financial of Sand & Gravel's claims. The plaintiffs maintain, and the defendants would appear to agree, that two assignments—one between Sand & Gravel and Fidelity and Deposit, the other between Fidelity and Deposit and Contee Financial—result in an assignment to Contee Financial of any claims which Sand & Gravel would have had against the defendants. Under this assignment, Contee Financial is not standing in the shoes of Fidelity and Deposit, but rather in the shoes of Sand & Gravel. In light of the remoteness and duplicative recovery problems discussed above, Sand & Gravel would have had no claims—itself—against the defendants for the collusive activity alleged with regard to the submission of bids to Fidelity and Deposit.

But the plaintiffs also maintain that they have been assigned the claims of Fidelity and Deposit itself against the defendants. However, it is undisputed that the documents submitted by the defendants with their motion for summary judgment are the only instruments which could have effected such an assignment, and those documents clearly assign to Contee Financial only those claims of Fidelity and Deposit against the "debtors," which, in this case, were Contee Sand & Gravel and its subsidiaries.

 The plaintiffs finally argue that there is a genuine dispute as to whether, in fact, Fidelity and Deposit assigned its anti-trust claims against the defendants. However, under Rule 56, this Court must look to the pleadings, averments and other submissions of the parties to determine whether a genuine dispute as to a material fact exists. A party cannot rely on the mere allegations in his pleadings in opposing a motion for summary judgment. Instead,

> He must present evidentiary matter showing that there is a genuine issue of material fact that is worth bringing to trial, or else, summary judgment, if appropriate, may be entered against him. Wright, Miller and Kane, *Federal Practice and Procedure*, § 2721 at 42 (1983).

Here, the defendants have offered the four documents which cover all assignments by Fidelity and Deposit to Contee Financial, and have also submitted an affidavit from Fidelity and Deposit, all of which demon-

strate that Fidelity and Deposit did not assign its claims against the defendants to Contee Financial.

Accordingly, the defendant's motion to dismiss, considered as a motion for summary judgment in accordance with the provisions of Rule 56 Fed.R.Civ.P., will be granted.