Robin K.A. FICKER

v.

**CHESAPEAKE & POTOMAC TELEPHONE CO., et al.**

Civ. No. Y–83–4432.

United States District Court, D. Maryland.

Oct. 29, 1984.

Robin K.A. Ficker, Bethesda, Md., pro se.

J. William Sarver, Baltimore, Md., John M. Goodman, and Julie M. Saulnier, Washington, D.C., for defendants.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Robin K.A. Ficker, a Maryland attorney, filed this suit against Chesapeake and Potomac Telephone Company ("C & P") and the Reuben Donnelley Corporation ("Donnelley") pursuant to Section 4 of the Clayton Act seeking tremble damages, 15 U.S.C. § 15, and injunctive relief, 15 U.S.C. § 26, for alleged violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. § 1, 2.[1] Defendants now seek dismissal of the plaintiff's complaint for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff has failed to respond to the defendants' motion despite having been specifically invited to do so by this Court.

According to the facts alleged by the plaintiff, defendant C & P is a Maryland corporation engaged in the telecommunications business in Maryland and elsewhere. Defendant Donnelley is a Delaware corporation under contract with C & P to publish and distribute directories containing the names, addresses, and telephone numbers of C & P subscribers ("white pages"); these directories also contain classified advertisements for business subscribers of C & P ("yellow pages").

The complaint specifically alleges that both defendants have performed acts in Maryland in furtherance of an "unlawful attempt and conspiracy to monopolize, and an unlawful contract, combination, or conspiracy to restrain interstate commerce of the United States." Complaint ¶ 4. These claims are based upon the defendants' refusal to print the plaintiff's advertisement containing price information for certain legal services offered by the plaintiff. The plaintiff contends that consumers of legal services are deprived of meaningful price comparisons for these services and are unable to locate legal services according to price because of the defendant's refusal to publish this information in the classified advertisements. Plaintiff thus concludes that this and other such omissions deny consumers the "benefit of full, free, and open competition in the provision of [legal] services, and [that] prices for such services will remain at artificial and non-competitive levels as a result." Complaint ¶ 15.

Finally, the plaintiff asserts that his law practice has been injured to the extent that he has lost fees from potential clients who would have used his services (because of their cost) were it not for defendants' actions which allegedly prevented them from doing so.

## I.

For the purpose of this motion to dismiss, the plaintiff's complaint will be construed in a light most favorable to the plaintiff, and its allegations are, therefore, taken as true. *See* Wright and Miller, 5 *Federal Practice and Procedure:* Civil § 1357 at 594 (1969) (citations omitted). This Court may dismiss the complaint only if it "appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41,

---

**1.** Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several States ... is declared to be illegal ...," 15 U.S.C. § 1.

Section 2 of the same act states that "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States ... shall be deemed guilty of a misdemeanor ...," 15 U.S.C. § 2.

44–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). However, the Court is not bound to accept conclusory allegations concerning the legal effect of the events the plaintiff has set out if these allegations do not reasonably follow from his description of what happened. Wright and Miller, *supra,* at 597. A pleader is not able to rely solely on "averments that on their face comprehend activity clearly exempt from liability." *City of Gainsville v. Florida Power and Light Co.,* 488 F.Supp. 1258, 1264 (D.Fla. 1980). It is apparent from the pleadings that the plaintiff has failed to allege any facts which, if true, would establish a violation under the Sherman Act and thereby entitle him to relief. Accordingly, defendants' motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., will be granted as to both Counts I and II of the complaint.

## II.

In considering antitrust claims, both the Supreme Court, *see Lorain Journal Co. v. United States,* 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162 (1951); *United States v. Colgate and Co.,* 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919), and the Fourth Circuit, *see Virginia Academy of Clinical Psychologists v. Blue Shield,* 624 F.2d 476, 483 (4th Cir.1980), have recognized that absent any anticompetitive purpose or design to create a monopoly, "a business may unilaterally choose those with whom it will conduct business," as well as the terms and conditions of those business dealings. *Hester v. Martindale-Hubbell, Inc.,* 659 F.2d 433, 436 (4th Cir. 1981). Federal antitrust laws were enacted to prevent anticompetitive conduct, P. Areeda and D. Turner, III *Antitrust Law,* ¶ 736(e) at 274 (1978); *see* Cong.Rec. 2457, 3151–53 (1890), rather than to enforce popular public utility notions of fair dealing.

Areeda, *supra,* at 274. Even a recognized monopolist is not required to "deal non-discriminately [2] with would-be purchasers, whether they are in competition or not." *Id.* at 271. Only refusals to deal as a part of a conspiracy to restrain trade or to maintain a monopoly violate the antitrust laws. J. Von Kolinowski, *Antitrust Laws and Trade Regulations,* 2 § 6C.02[2] (1983).

Assuming arguendo that defendant Donnelley has a monopoly on yellow-page publishing in the area served by defendant C & P, the monopoly it enjoys is a natural incident of the monopoly status granted to C & P by Congress and the Federal Communications Commission, *see* 47 U.S.C. § 151 *et seq.,* because of its public utility character. *Best Advertising v. Illinois Bell Telephone Company and Reuben H. Donnelley Corporation,* 229 F.Supp. 275 (S.D.Ill., 1964), *aff'd,* 339 F.2d 1009 (7th Cir.1965). Although the advertising aspect of the business does not partake of this public utility character, the directories (of which the yellow page advertising is a part) are a normal and necessary part of C & P's effective operation as a public utility. *Best,* 229 F.Supp. at 277.

The plaintiff alleges that both defendants are attempting to monopolize all classified advertising in the area served by C & P; however, he has not alleged that either defendant has done anything other than refuse to publish his advertisement *exactly* as he tendered it. Moreover, it is apparent from the face of the complaint that none of the parties is in competition with either of the other parties; thus, it is difficult, if not impossible, to envision any plausible scenario in which the defendants' refusal would tend to stiffle competition or maintain any monopoly for the benefit of either defendant.[3] *See id.* Conceding the monopoly status of both defendants does

---

**2.** By "non-discriminately," the Court excludes refusals to deal for such obvious economic reasons as poor credit and the like. Areeda, at 271, note 4.

**3.** If anything, defendant's refusals to accept certain kinds of advertising would tend to create market opportunities for competing advertising firms thereby decreasing their control over the

market. Both the complaint and the defendants' motion to dismiss note that C & P's reason for maintaining price restrictions is based on its concern that price quotations in it's classified adds will change within the useful life of the directories. Complaint ¶ 12; Defendants' Memorandum in Support of Their Motion to Dismiss at 2, n. 2.

not advance the plaintiff's argument that he has stated a claim upon which relief can be granted. Unlike the plaintiff in *Lorain Journal, supra*,[4] the plaintiff in the instant case does not allege, nor can he allege, that the defendants' conduct restrained trade in *their own* market for *their own* benefit. Absent this anticompetitive animus, plaintiff's claim must fail.

In *Official Airline Guides, Inc. v. FTC*, 630 F.2d 920, 928 (2d Cir.1980), the Second Circuit concurred with the contention of the FTC that Official Airline Guides had arbitrarily refused to publish commuter airline schedules to the detriment of competition among air carriers. Nonetheless, the court held that Official Airline Guides' refusal did not violate the Federal Trade Commission Act.[5] It determined that the cases relied upon by the FTC which required monopolists to deal with their competitors were inapplicable because Official Airline Guides did not compete with the airlines. *Official Airline Guides*, 630 F.2d at 925–26. The court also refused to apply the cases requiring monopolies to deal where their refusals furthered their own monopolies because Airline Guides' refusal did nothing to further its monopoly over the printing of airline schedules. *Id.* Similarly, the defendants in the instant case are not in competition with the plaintiff nor does the complaint allege any facts that would tend to support the plaintiff's conclusion that the defendants' conduct facillitated or enhanced any monopoly either defendant may enjoy.

Furthermore, the plaintiff has failed to allege any concerted activity on the part of the defendants that would give rise to an actionable claim under the Sherman Act. Plaintiff's reliance on *Hester v. Martindale-Hubbell, Inc.*, 659 F.2d 433 (4th Cir. 1981), in support of his contention that he has a claim cognizable under the Sherman Act is misplaced. In *Hester*, the defendants' complete refusal to publish *any* advertisement of the plaintiff was found to "[lie] well beyond the pale of even the most liberal extension of the concept of concerted activity." *Id.* at 436.

Like *Hester*, this "is not a case in which those at a lower level of competition have conspired to force a supplier at a higher level of competition to impose some restraint. Nor is it a case in which a supplier at a higher level of competition has coerced those at a lower level of competition to acquiesce in some anticompetitive endeavor." *Id.* (citations omitted). As the court observed in *Dollar-A-Day Rent a Car Systems, Inc. v. Mountain States Telephone Company*, 22 Ariz.App. 270, 526 P.2d 1068 (1974), regulations restricting price advertising in the yellow pages of telephone directories are not anticompetitive and therefore do not run afoul of federal antitrust laws. Instead, they are "in [full] accord with the public purpose expressed by Congress." *Id.* 526 P.2d at 1073, citing Federal Trade Commission Act, 15 U.S.C. § 41 *et seq.* Thus, any restraint imposed by the advertising regulations of the defendants was not an "unreasonable restraint," *Best Advertising*, 339 F.2d at 1011, citing *Standard Oil Company of New Jersey v. United States*, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1910), such as price fixing, elimination of competition or the creation of a monopoly, and, therefore, is not actionable under the federal antitrust laws. Furthermore, the plaintiff's claim here is even weaker than the one rejected by the Fourth Circuit in *Hester*. The plaintiff in *Hester* was completely denied the right to advertise in a medium in which his competitors advertised.[6] The pleadings in the instant case

---

4. In *Lorain Journal,* the Lorain Journal Co. enjoyed a substantial monopoly over local and national news and advertising in its Community and refused to accept advertisements from anyone who advertised over the *competing* radio station. *Lorain Journal,* 342 U.S. at 148, 72 S.Ct. at 183.

5. Although *Official Airline Guides,* 630 F.2d at 920, involved Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, the authorities relied upon by the parties and the court included *Colgate,* 250 U.S. at 300, 39 S.Ct. at 465 and *Lorain Journal,* 342 U.S. at 148, 72 S.Ct. at 183.

6. In *Hester,* the court in its *dicta* concluded that the "restricted access to advertising" was a re-

clearly establish that the plaintiff received the same treatment as his competitors and was not prevented from advertising in the defendants' directory.

These cases make it abundantly clear that the defendants are under no obligation to accept the plaintiff's advertisement regardless of their monopoly position in the area served by C & P. *Lorain Journal*, 342 U.S. at 155, 72 S.Ct. at 187; *Official Airline Guides*, 630 F.2d at 928. Moreover, plaintiff's complaint must fail because he has not alleged nor is he able to allege that he competes with either defendant, *Official Airline Guides*, 630 F.2d at 925–26; *Best*, 229 F.Supp. at 277, or that he has been discriminated against by the defendants in favor of his competitors.

### III.

Additional grounds exist for dismissing the plaintiff's claims for damages under Section 4 of the Clayton Act, 15 U.S.C. § 15.[7] Plaintiff does not allege facts which would confer standing upon him under the federal antitrust laws.[8] This Court has held that antitrust suits should be dismissed if the plaintiff cannot recover under any set of facts supporting the allegations in the complaint. *Levey v. E. Stewart Mitchell, Inc.*, 585 F.Supp. 1030 (D.Md.,

1984), appeal docketed, No. 84–1597 (4th Cir. June 7, 1984). The complaint is also devoid of any facts which support the allegation that the plaintiff has suffered the requisite antitrust injury.

■ The Supreme Court has made it increasingly clear that "Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation." *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 263 n. 14, 92 S.Ct. 885, 891–892 n. 14, 31 L.Ed.2d 184 (1972). Even where an antitrust violation is established by the plaintiff or conceeded by a defendant, it does not necessarily follow that any person harmed as a result of such conduct is a person injured by reason of the antitrust laws within the meaning of Section 4 of the Clayton Act. *See Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 528, 103 S.Ct. 897, 903, 74 L.Ed.2d 723 (1983). Determining whether a person has standing under Section 4 requires an evaluation of the following factors:

(1) the nature of the alleged injury;

(2) whether the plaintiff is a consumer or competitor in the market where trade was allegedly restrained;[9]

straint of trade but not actionable unless accompanied by "concerted activity." *Hester*, 659 F.2d at 436. However, in the present case, defendants have not "restricted access to advertising" either individually or in concert; they have merely established rules for advertising content and have applied them in an even-handed, non-discriminatory way. Without such "restricted access to advertising" in furtherance of some anticompetitive purpose, *Hester* does not save the plaintiff's claims from being dismissed for failure to state a claim upon which relief may be granted.

7. Section 4 of the Clayton Act provides that: Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor ... And shall recover thrice fold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

8. The requirement of "antitrust standing" is different and more restrictive than standing as a constitutional doctrine. While almost any harm will satisfy the standing requirement in the con-

stitutional context, much more is required to acquire standing to pursue a damage action under Section 4 of the Clayton Act.

9. This frequently dispositive inquiry, *see Associated General Contractors*, 459 U.S. at 535, 103 S.Ct. at 907, has been referred to as the "target area" test. It has also been described as requiring a plaintiff to show that he is "within the area of the economy which is endangered by a breakdown of competitive conditions in a particular industry." *Id.* 459 U.S. at 536, n. 33, 103 S.Ct. at 907 n. 33, citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 546–547 (5th Cir. 1980); *Engine Specialties, Inc. v. Bombardier Ltd.*, 605 F.2d 1, 17–18 (1st Cir.1979); *Calderone Enterprises Corp. v. United Artists Theater Circuit, Inc.*, 454 F.2d 1292–1295 (2d Cir.1971). The Second Circuit has also stated that for a plaintiff to be within the target area, he must be: a person against whom the conspiracy was aimed, such as a competitor of the persons sued. Accordingly, we have drawn a line excluding those who have suffered economic damage by virtue of their relationship with "targets" ...

(3) the tenuous and speculative character of the casual relationship between the plaintiff's alleged harm and the alleged restraint;

(4) the potential for duplicative recovery or complex apportionment of damages; and

(5) the existence of more direct victims of the alleged conspiracy.

*See Associated General Contractors,* 459 U.S. at 542, 103 S.Ct. at 911.

■ A review of the plaintiff's allegations in light of these cases reveals that both counts of the complaint should be dismissed with regard to damages for lack of standing. Count I is easily disposed of because the plaintiff is not a competitor of either defendant and the defendants are not competitors of each other. Nor is the plaintiff a consumer in the market in which the alleged restrain of commerce occurred. In sum, the plaintiff does not allege any facts in Count I which would place him within the target area of the alleged restrain of trade, *Associated General Contractors,* 459 U.S. at 536 n. 33, 542–546, 103 S.Ct. at 907 n. 33, 911–913. Count I simply fails to disclose any facts which identify any justiciable interest the plaintiff has with regard to damages in the competition affected by the restrain. *Plumbers and Steamfitters Local 598 v. Morris,* 511 F.Supp. 1298, 1306 (D.Wash.1981).

The allegations in Count II also fail to establish plaintiff's standing to pursue damages under Section 4 even though the plaintiff is a consumer in the advertising market (the market presumably affected by anticompetitive conduct in furtherance of defendants' monopoly). He does not allege that he has been charged noncompet-

itive prices for his advertisements; therefore, the only market in which he conceivably could have suffered harm as a result of the defendants' conduct is the legal services market, a market in which he is not a consumer and in which neither defendant competes. Hence, Count II also fails to allege any facts which place the plaintiff within the target area of the alleged violation of Section 2 of the Sherman Act. *See Associated General Contractors,* 459 U.S. at 536, n. 33, 542, 103 S.Ct. 907, n. 33, 911.

■ In addition, plaintiff's alleged injury is too indirect and the damages too highly speculative for the plaintiff to recover under Section 4. Plaintiff has not established a "significant causal connection between the defendants' violation and [his] injury," Areeda, II *Antitrust Laws* ¶ 334a, at 163, or that his injury was "inextricably related to, and caused by, the alleged anticompetitive conduct." *Bichan v. Chemetron Corp.,* 681 F.2d 514 (7th Cir.1982), *cert. denied,* 460 U.S. 1016, 103 S.Ct. 1261, 75 L.Ed.2d 487 (1983). In *Associated General Contractors, supra,* the Court dismissed a union's complaint against a multi-employer association which allegedly had coered third parties in to dealing with nonunion firms. The coercive acts were alleged to have adversely affected the trade of certain unionized firms to the detriment of the business activities of the union and its members. The Supreme Court denied the union relief pursuant to Section 4 "partly because [the injury was] indirect, and partly because the alleged effects on the union may have been produced by independent factors ..." thereby making the union's damage claim too highly speculative. *Associated General Contractors,* 459 U.S. at 542, 103 S.Ct. at 911.[10]

*Calderone,* 454 F.2d at 1294.

Another Court of Appeals has asked whether the alleged injury is "arguably within the zone of interests protected by the antitrust laws." *Malamud v. Sinclair Oil,* 521 F.2d 1142, 1151–52 (6th Cir.1975).

10. The Court also pointed out that any attempt to determine the amount of such speculative damages and apportion them among possible conflicting and duplicative claims would embroil the court in complex and potentially un-

manageable proceedings. Such indirect causation and speculative harm has caused the dismissal of other actions under Section 4. *See Eastern Auto Distributors v. Peugeot Motors of America,* 573 F.Supp. 943 (E.D.Va.1983) (dismissing a defendant supplier's counterclaim for lost sales based on the plaintiff distributor's alleged tying arrangement which forced its dealers to sell both Peugeot and Renault automobiles).

Here, as in *Associated General Contractors*, the indirectness of the alleged harm and the presence of independent factors are fatal to the plaintiff's claim for damages. *Compare Associated General Contractors*, 459 U.S. at 542, 103 S.Ct. at 911 (presence of independent factors possibly accounting for harm made action for damages inappropriate) *with Blue Shield of Virginia v. McCready*, 457 U.S. 465, 475, n. 11, 102 S.Ct. 2540, 2547, n. 11, 73 L.Ed.2d 149 (1982) (plaintiff suffered directly from the alleged conspiracy and also could "ascertain [her damages] to the penny" thereby making antitrust damages appropriate). Customers ability to obtain low priced legal services from attorneys other than the plaintiff make it impossible for the plaintiff to establish the number of potential customers who would have turned to him for legal services (and the resulting fees he would have earned) were it not for the defendants' refusal to publish the price information in his advertisement. In fact, it is entirely possible that the plaintiff may have done less business if price information for legal was published in the defendants' yellow pages. Consequently, plaintiff's claims for damages pursuant to Section 4 of the Clayton Act are too speculative and potentially duplicative for this case to proceed beyond the present motion to dismiss.

Finally, this Court need not decide whether the injury plaintiff alleges was proximately caused by defendants' conduct for the purpose of determining whether there is standing to sue for injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26, because, as determined above, the conduct alleged in the complaint fails to support an actionable claim for violation of either Section 1 or 2 of the Sherman Act.[11] Accordingly, plaintiff's claim for injunctive relief must also fail.

After careful consideration of the pleadings in this case, defendants' motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), Fed.R.Civ.P., will be granted and plaintiff's complaint, accordingly, dismissed.

---

**11.** This Court recognizes that the standing requirements for injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26 are broader than those of Section 4. *State of Hawaii v. Standard Oil Co.,* 431 F.2d 1282, 1284–85 (9th Cir.1970), *aff'd,* 405 U.S. 251, 261, 92 S.Ct. 885, 890, 31 L.Ed.2d 184 (1972). Broader standing under Section 16 is justified because of the difference between the remedies available under each section. In contrast to Section 4, Section 16 does not involve punative and potentially disasterous judgments for treble damages and attorney's fees; neither is there the threat of duplicative recoveries. *In re Multidistrict Vehicle Air Pollution,* 481 F.2d 122, 130 (9th Cir.),

*cert. denied,* 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336 (1973).

Thus, the target area approach is irrelevant to the question of standing under Section 16. *Parks v. Watson,* 716 F.2d 646, 662 (9th Cir. 1983), citing *City of Rohnert Park v. Harris,* 601 F.2d 1040, 1044 (9th Cir.1979), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980); *In re Multidistrict Vehicle Air Pollution,* 481 F.2d at 130–31. All that is required for standing under Section 16 is that the plaintiff show a threatened loss or injury cognizable in equity proximately resulting from the alleged antitrust violation. *See Parks,* 716 F.2d at 662.